IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF OHIO
EASTERN DIVISION

Screen Media Ventures, LLC,    :

    Plaintiff,    :

  v.    :    Case No. 2:13-cv-845

    :    JUDGE EDMUND A. SARGUS, JR.
John Does 1-48,    Magistrate Judge Kemp

    Defendants.    :

ORDER

    This matter is before the Court on the motion for leave to take discovery prior to the Rule 26(f) conference filed by plaintiff Screen Media Ventures, LLC.  For the following reasons, the motion for leave (#3) will be denied.  Further, Screen Media will be directed to show cause why this case should not be dismissed for lack of subject matter jurisdiction.

I.

    This is a copyright infringement and contributory copyright infringement case involving the file transfer technology known as BitTorrent.  The use of this technology, which allows peer-to-peer file sharing, has resulted in much litigation as of late.  See, e.g., Third Degree Films, Inc. v. John Does 1-72, 2013 WL 1164024 (E.D. Michigan March 18, 2013)(provides detailed explanation of BitTorrent file-sharing protocol).  The focus of the litigation has been the alleged use of this technology to unlawfully reproduce and distribute via the internet copyrighted motion pictures.  The particular motion picture at issue in this case is "Infected."

    In this case, Screen Media has identified 48 John Doe defendants by the internet protocol (IP) address assigned to them by their internet service providers (ISPs).  Screen Media has attached to its complaint the ISP for each defendant, the torrent

file copied and distributed by them, and their location at the time of the allegedly infringing download.  Through its current motion, Screen Media seeks to serve a Rule 45 subpoena on the ISPs that issued the IP addresses to uncover the identity of the account holders of these IP addresses, including their names, current and permanent addresses, telephone numbers and email addresses.  The identified ISPs include Clear Wireless, LLC, Com Net, Comcast Cable, Earthlink, Embarq Corporation (Embarq Communications, Inc.), Frontier Communications, Horizon Telcom, Hughes Network Systems, Viasat Comunications, WideOpenWest, and Wildblue Communications.  Screen Media states that any information disclosed in response to the subpoena will be used only for the purpose of protecting its rights under the Copyright Act.

                               II.

   Fed.R.Civ.P. 26(d) provides generally that discovery may not begin prior to the Rule 26(f) conference.  However, Rule 26(d) also provides that expedited discovery may be conducted prior to that conference when authorized by court order.  Consequently, a district court has the discretion to permit discovery prior to a Rule 26(f) conference.  See, e.g., Qwest Communs. Int'l Inc. v. Worldquest Networks, Inc., 213 F.R.D. 418, 419 (D. Colo. 2003).  Courts within the Sixth Circuit require a showing of good cause in order to authorize expedited discovery.  Tesuco Holdings Ltd. v. Does 1-12, 2012 WL 6607894 (E.D. Tenn. December 18, 2012).

   Good cause may be found based upon "(1) allegations of copyright infringement, (2) the danger that the ISP will not preserve the information sought, (3) the narrow scope of the information sought, and (4) the conclusion that expedited discovery would substantially contribute to moving the case forward."  Best v. Mobile Streams, Inc., 2012 WL 5996222, *1 (S.D. Ohio November 30, 2012), citing Arista Records, LLC v. Does

1-9, 2008 WL 2982265 (S.D. Ohio July 29, 2008).  Courts also look to whether evidence would be lost or destroyed with time and whether the proposed discovery is narrowly tailored.  Id.; see also Arista Records, LLC v. Does 1-15, 2007 WL 5254326 (S.D. Ohio May 17, 2007).

### III.

Screen Media contends that it has demonstrated good cause under the standards described above.  On this issue, Screen Media asserts that it can show irreparable harm from the infringement of the copyrighted motion picture.  According to Screen Media, it has a valid copyright in the motion picture, defendants had access to the film, and substantial similarity exists between its copyrighted work and the alleged infringing work.  Further, Screen Media argues that defendants will not be prejudiced by the proposed expedited discovery because it is narrowly tailored and sought for a very limited purpose.  Finally, it contends that it has no other means for obtaining the identities of the Doe defendants.

Screen Media also argues that "courts throughout the country" have "consistently" granted motions for expedited discovery in actions against BitTorrent defendants.  The Court's review of the authority cited by Screen Media indicates that this is generally true.  Courts within the Sixth Circuit have found good cause and granted motions for expedited discovery in such actions as well.  See, e.g., Vision Films, Inc. v. Does 1-16, 2013 WL 1385206 (E.D. Tenn. April 3, 2013); Malibu Media, LLC v. John Does 1-9, 2013 WL 142083 (E.D. Mich. January 11, 2013)(granting motion in part).

In granting expedited discovery in BitTorrent cases, courts have found several factors significant.  One such factor is the specificity with which the defendants have been identified, including the assigned IP addresses, the date and time of the

alleged illegal download, the hash identifier of the downloaded file, the ISP, and the location of the IP address.  Also significant are the steps taken by the plaintiff to locate and identify the Doe defendants.  Further, courts have looked to whether the elements of a copyright infringement claim have been pled.  Courts also have considered whether the proposed discovery seeks information likely to lead to information which would allow a plaintiff to effectuate service on the defendants.  Finally, courts have considered the likelihood of prejudice to any alleged infringers.  See, e.g., Vision Films, 2013 WL 1385203, at *2.

IV.

The Court has reviewed Screen Media's complaint and current motion.  Based on this review, the Court is not convinced that Screen Media owns an exclusive right under a copyright.  Rather, based on the current state of the record, it may well be that Screen Media lacks standing to sue for copyright infringement.  This is so for the following reasons.

Under 17 U.S.C. §106, the owner of a copyright has the exclusive rights to do and to authorize any of the following six specific rights:

> (1) to reproduce the copyrighted work in copies or phonorecords;
>
> (2) to prepare derivative works based upon the copyrighted work;
>
> (3) to distribute copies or phonorecords of the copyrighted work to the public by sale or other transfer of ownership, or by rental, lease, or lending;
>
> (4) in the case of literary, musical, dramatic, and choreographic works, pantomimes, and motion pictures and other audiovisual works, to perform the copyrighted work publicly;
>
> (5) in the case of literary, musical, dramatic, and choreographic works, pantomimes, and pictorial, graphic, or sculptural works, including the individual

>    images of a motion picture or other audiovisual work,
>    to display the copyrighted work publicly; and
>    (6) in the case of sound recordings, to perform the
>    copyrighted work publicly by means of a digital audio
>    transmission.

17 U.S.C. §106

Section 201(d)(1) provides that ownership may be transferred in whole, or in part, by any means "of conveyance or by operation of law." The statute defines the transfer of copyright ownership as an assignment, mortgage, exclusive license, or any other conveyance, alienation, or hypothecation of a copyright or of any of the exclusive rights comprised in a copyright, whether or not it is limited in time or place of effect, but not including a nonexclusive license. 17 U.S.C. §101. Further, any of the exclusive rights "including any subdivision of any of the right specified by §106, may be transferred as provided by clause (1) and owned separately. The owner of any particular exclusive right is entitled, to the extent of that right, to all of the protection and remedies accorded to the copyright owner ..." 17 U.S.C. §201(d)(2). Warner/Chappell Music, Inc. V. Blue Moon Ventures, 2011 WL 662691 (M.D. Tenn. February 14, 2011).

The statute further provides that the "legal or beneficial" owner of an exclusive right is entitled to "institute an action for any infringement of that particular right committed while he or she is the owner of it." 17 U.S.C. §501(b). That is, "to have standing to bring suit, a party must have some ownership rights over at least part of the exclusive right for which he wishes to sue." Warner/Chappell, supra, at * ; see also Righthaven LLC v. Wolf, 813 F.Supp.2d 1265, 1271-1272 (D. Colo. 2011) ("only parties with a legally recognized interest in copyright as delineated in §106 ('legal owners'), and parties who stand to benefit from the legal dissemination of copyrighted material ('beneficial owners') have the right to sue for

-5-

infringement under §501(b) of the Copyright Act."). However, "[t]he right to sue for an accrued claim for infringement is not an exclusive right under §106." <u>Silvers v. Sony Pictures Entertainment, Inc.</u>, 402 F.3d 881, 885 (9th Cir. 2005). As a result, the assignment of a right to sue without the transfer of an associated exclusive right does not confer standing to sue. <u>Id</u>. at 884, 890.

The above principles recently were applied specifically in the BitTorrent context in <u>Contra Piracy v. Does 1-2919</u>, 2013 WL 2403589 (N.D. Cal. May 31, 2013). In that case, the court found that, based on the record before it, the plaintiff appeared to have been assigned nothing beyond a "bare right to sue" and that this raised a question of standing. Of particular concern to the court were the vague allegations of the complaint that plaintiff was the "'exclusive assignee of all enforcement rights and interest worldwide, with the full authority to pursue and prosecute any causes of action with respect to the Work.'" <u>Id</u>. at *2. Further, plaintiff had argued in its application for discovery that "'it holds the exclusive enforcement rights in the registered, copyrighted Work' and that this assignment is limited." <u>Id</u>. In light of what it viewed as a lack of explanation of the meaning of "enforcement rights", the court denied plaintiff's application for early discovery and directed plaintiff to show cause why the case should not be dismissed for lack of subject matter jurisdiction. <u>Id</u>. Following briefing and oral argument, the court dismissed the case finding that the "exclusive rights" assigned to the plaintiff were merely illusory and that the plaintiff held nothing more than the bare right to sue. <u>Contra Piracy v. Does, 1-2919</u>, 2013 WL 3828771 (N.D. Cal. July 23, 2013).

In this case, Screen Media makes similar vague allegations regarding its ownership rights. For example, it alleges in the

-6-

complaint that it "has been the holder of the pertinent exclusive rights in the Motion Picture infringed by Defendants (Exhibit A)." See Complaint (#1), ¶14.  Exhibit A to the complaint lists the author of the work and copyright claimant as Infected LLC. Attached to Exhibit A is Exhibit A-1, captioned as "Copyright Registration Assignment Recordation Documentation."  This exhibit is an e-mail dated August 22, 2013 which also lists Infected LLC as the copyright claimant.  Also attached is Exhibit A-2, captioned as "Sales Agent Confirmation."  This one-page, typed document in letter form, but not on what reasonably could be described as official letterhead, is dated April 24, 2013, and is addressed to "To whom it may concern."  According to this document, Screen Media is authorized:

> by itself, or in the name of Infected LLC as required by law, or through an appropriate anti-piracy organization to undertake such actions as Screen Media Ventures LLC believes necessary or appropriate to protect against piracy of any of the licensed rights in the "INFECTED" throughout the territory for the agency period and any applicable distribution term, as set out in the agency agreement. Such actions may include registering the motion picture or recording any documents with governmental authorities, sending or having cease and desist letters and notices of infringement sent, and bringing, prosecuting, defending and appearing in all suits, actions and proceedings concerning any piracy, infringement or misappropriation of any of the licensed rights in the motion picture throughout the territory during the agency period or any applicable distribution term.

This document contains a signature which purports to be from a member of Infected LLC, although the member is not identified by name.  In its motion for early discovery, Screen Media again reiterates that it "owns the exclusive rights under the registered copyright attached as Exhibit A for the Motion Picture" but there is nothing attached to the motion which provides any further explanation of Screen Media's ownership

interest.

In light of all of the above, the Court concludes that this case raises the issue of standing under circumstances similar to those before the court in Contra Piracy.  Because standing is a jurisdictional prerequisite, the Court may raise it sua sponte.  A plaintiff has the burden of establishing standing.  Loren v. Blue Cross & Blue Shield of Mich., 505 F.3d 598, 606-07 (6th Cir. 2007).  To satisfy standing requirements, a plaintiff must show: (1) it has suffered an injury in fact that is concrete and particularized and actual or imminent, not conjectural or hypothetical; (2) the injury is fairly traceable to the challenged action of the defendant; and (3) it is likely, as opposed to merely speculative, that the injury will be redressed by a favorable decision.  Id.  If a plaintiff cannot satisfy this burden, their claims must be dismissed for lack of subject matter jurisdiction.  Id.

Based on the current record, the Court is not persuaded that Screen Media has met its burden of establishing that it has standing to pursue this copyright infringement action relating to the film "Infected."  Given this circumstance, the Court finds it appropriate to deny the application for early discovery at this time.  Rather, in order to address the standing issue, the Court will direct Screen Media to show cause why this case should not be dismissed for lack of subject matter jurisdiction.

V.

For the reasons stated above, the motion for leave to take discovery (#3) is denied.  Plaintiff shall, within fourteen days of the date of this order, show cause why this case should not be dismissed for lack of subject matter jurisdiction.

/s/ Terence P. Kemp<br>United States Magistrate Judge